1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

7
8
9

SUSAN LENEHAN and JODI BRUST, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC.,

Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

10
11
12
13
14
15
16
17

Plaintiffs Susan Lenehan and Jodi Brust ("Plaintiffs") bring this action on behalf of

18  themselves, and all others similarly situated against Defendant Amazon.com, Inc. ("Amazon" or

19  "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their

20  counsel and based upon information and belief, except as to the allegations specifically

21  pertaining to herself, which are based on personal knowledge.

22

## NATURE OF THE ACTION

23

24      1.      This is a class action lawsuit brought against Defendant for wiretapping the verbal

25  communications of Plaintiffs and other consumers using Defendant's smart devices and third-

26  CLASS ACTION COMPLAINT                          BURSOR & FISHER, P.A.
    CASE NO.                                1990 NORTH CALIFORNIA BLVD., SUITE 940
27                                                   WALNUT CREEK, CA 94596

28                                        -1-

party manufactured smart devices (collectively, the "Alexa Devices") and their internal software

technology.  The wiretaps, which are embedded in the software technology, are used by

Defendant to secretly observe and record users' verbal communications, including personal

information.  By doing so, Defendant has violated the Federal Wiretap Act, 18 U.S.C. 2510, *et*

*seq.*, the Florida Security of Communications Act ("FSCA"), Fla. Stat. Ann. § 943.01, *et seq.*,

and violated California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632.

2.     In or about December 2019, Plaintiff Lenehan purchased an Alexa Device.

Likewise, in or about August 2017, July 2020, and November 2020, Plaintiff Brust purchased

Alexa Devices.  The Alexa Devices are only supposed to record communications when a trigger

word is used.  Nonetheless, the Alexa Devices recorded, stored, and divulged to Defendant the

contents of Plaintiffs' communications with others, even when no trigger word was used to

activate the device and provide consent to be recorded.

3.     Plaintiffs bring this action on behalf of themselves and a Class of all persons

whose verbal communications were intercepted through the use of Defendant's wiretap on the

Alexa Devices when the trigger word was not used.

## PARTIES

4.     Plaintiff Susan Lenehan is a resident of St. Augustine, Florida and has an intent to

remain there, and is therefore a domiciliary of Florida.  In or about December 2019, prior to the

filing of this lawsuit, Plaintiff Lenehan purchased and Echo Dot (3rd Generation)—one of the

Alexa Devices—and installed the device in her home in her living room/kitchen area.  Plaintiff

Lenehan's Alexa Device was installed from December 2019 through June 2021.  During the time

in which her Alexa Device was installed, Plaintiff Lenehan has held numerous conversations

CLASS ACTION COMPLAINT
CASE NO.

with others in the presence of the Alexa Device.  These conversations included topics such as telephone calls with doctors about medical issues, telephone calls with financial institutions and lawyers, and telephone calls with friends and family about private or intimate matters.  During these conversations, Plaintiff Lenehan did not intend to trigger her Alexa Device, nor she did intentionally say the trigger word.  Nonetheless, upon information and belief, the Alexa Device was always listening to and recording Plaintiff Lenehan's private conversations with others, even when Plaintiff Lenehan did not trigger the Alexa Device.  Further, Plaintiff Lenehan has experienced a number of instances when her Alexa Device would activate even when Plaintiff Lenehan did not say the trigger word.  Plaintiff Lenehan would only realize that her conversation had been recorded by the Alexa Device because the Alexa Device would ping or speak after Plaintiff finished her sentence.  The Alexa Device sent Plaintiff Lenehan's communications to Defendant, even when it was unintentionally triggered.  Plaintiff Lenehan did not provide affirmative consent to Defendant to record her private conversations when she did not trigger her Alexa Device.

5.     Plaintiff Jodi Brust is a resident of Kelseyville, California and has an intent to remain there, and is therefore a domiciliary of California.  In or about August 2017, prior to the filing of this lawsuit, Plaintiff Brust purchased an Echo Dot (2nd Generation)—one of the Alexa Devices.  Likewise, in or about July 2020, Plaintiff Brust purchased an Echo Dot (3rd Generation)—one of the Alexa Devices.  Finally, in or about November 2020, Plaintiff Brust purchased an Echo Dot (4th Generation) and Echo Show 8—both Alexa Devices.  Plaintiff Brust installed these Alexa Devices in her bedroom, living room, kitchen, and dining room.  Plaintiff Brust's Alexa Devices were installed from August 2017 through present.  During the time in

which her Alexa Devices were installed, Plaintiff Brust has held numerous conversations with others in the presence of the Alexa Devices.  These conversations included topics such as telephone calls with doctors about medical issues, telephone calls with financial institutions and lawyers, and telephone calls with friends and family about private or intimate matters.  During these conversations, Plaintiff Brust did not intend to trigger her Alexa Devices, nor she did intentionally say the trigger word.  Nonetheless, upon information and belief, the Alexa Device was always listening to and recording Plaintiff Brust's private conversations with others, even when Plaintiff Brust did not trigger the Alexa Devices.  The Alexa Device sent Plaintiff Brust's communications to Defendant, even when it was unintentionally triggered.  Plaintiff Brust did not provide affirmative consent to Defendant to record her private conversations when she did not trigger her Alexa Devices.

6.      Defendant Amazon is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.  Amazon manufacturers, develops, and sells the Alexa Devices, and has access to all communications recorded by the Alexa Devices.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interests and costs, and at least one member of the proposed class is citizen of state different from Defendant.

8.      This Court has personal jurisdiction over the Defendant because Defendant maintains its principal place of business in Washington.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

9.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant resides in this District.

## STATEMENT OF FACTS

**A.      Overview Of The Alexa Devices**

10.     Defendant Amazon develops software technology and smart devices. Defendant's software product, Alexa, is a "cloud-based voice service available on hundreds of millions of devices from Amazon and third-party device manufacturers."[1]

11.     Alexa is a "voice AI" which listens for verbal cues, commands, and questions and uses a simulated voice to respond to the user's communication.[2]  The Alexa software enables users to verbally interact with Amazon devices rather than physically.

12.     Defendant draws a distinction between its software and devices as: "Alexa puts the smart in … speakers, screens and wearables.  Alexa lives in the cloud, which means [the user] can ask Alexa for help wherever [the user] find[s] Alexa."[3]

13.     Defendant produces a number of Alexa compatible devices, such as Amazon Smart Oven, AmazonBasics Microwave, Echo Dot, Echo Frames, Echo Glow, Echo Input, and Fire TV, to name a few.  In addition, Alexa is compatible with third-party manufactured devices,

---

[1] WHAT IS ALEXA?, https://developer.amazon.com/en-US/alexa.

[2] ALEXA FEATURES, https://www.amazon.com/alexa-skills/b/?ie=UTF8&node=13727921011&tag=googhydr-20&hvadid=480592914378&hvpos=&hvexid=&hvnetw=g&hvrand=95567699 38982265414&hvpone=&hvptwo=&hvqmt=e&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=90 31951&hvtargid=kwd-326574424274&ref=pd_sl_5ufl908g5h_e.

[3] *Id.*

such as cameras, cooking appliances, residential security systems, thermostats, toys, and vehicles.

14.     As of January 2020, Amazon has sold "hundreds of millions of Alexa-enabled devices" and had "already integrated [Alexa] into more than 100,000 [third-party manufactured] smart home products from over 9,500 brands."[4]

15.     To set up an Amazon or third-party manufactured Alexa compatible device (collectively, "Alexa Devices"), a user must download the Alexa application ("Alexa App") to a smartphone or tablet.  Then, the user must create and log into an Amazon account to use the Alexa App.  Once in the Alexa App, the user is prompted to set up the Alexa Device, which pairs the Alexa Device with the Alexa App.  Once paired, the Alexa Device is ready to be used by anyone, including people who do not have an Amazon account.

16.     To use an Alexa Device, a user must say a "trigger word" (*e.g.*, "Alexa" or "Echo"), which prompts the Alexa Device to record the user's verbal communication that comes after the trigger word (*e.g.*, "what is the temperature outside?").  Then, the Alexa Device sends the recording to Defendant's servers, which interprets and processes the communication, receives the relevant information, and the Alexa Device responds accordingly to the user (*e.g.*, "it is seventy-two degrees").

---

[4] Ben F. Rubin, *Amazon Sees Alexa Devices More Than Double In Just One Year*, CNET, Jan. 6, 2020, https://www.cnet.com/home/smart-home/amazon-sees-alexa-devices-more-than-double-in-just-one-year/.

17.     In other words, Alexa Devices are ***not supposed to record*** any communications that are not proceeded by the trigger word.  So, an Alexa Device will record "Alexa, what is the temperature outside?", but not simply, "What is the temperature outside?".

18.     However, Alexa Devices—including the devices owned by Plaintiffs—will monitor, intercept, record, and store communications ***even when*** users do not say the trigger word.  This is despite Amazon's claim that "Alexa is not designed to record [] conversations."[5]

19.     Amazon does state there is a "small chance" an Alexa Device will record communication without the trigger word.  But in practice, there is more than a "small" chance.  It is reportedly very common for Alexa to monitor, intercept, record, and store communications without a user saying a trigger word.  Indeed, Alexa Devices have been falsely activated by entirely different words, such as "congresswoman," "Kevin's car," "pickle," "cash transfers," and "I'm saying."[6]

20.     Bloomberg reports that there are at least 100 transcripts of conversation recorded and uploaded by Alexa Devices each day, and Defendant employs thousands of employees to listen to these recordings.[7]

---

[5] IS ALEXA RECORDING?, https://www.amazon.com/is-alexa-recording-conversations/b?ie=UTF8&node=21219697011.

[6] Jennifer Jolly, *It's Not You, It's Them:  Google, Alexa and Siri May Answer Even if You Haven't Called*, USA TODAY, Feb. 25, 2020, https://www.usatoday.com/story/tech/conferences/2020/02/25/google-alexa-siri-randomly-answer-even-without-wake-word-study-says/4833560002/.

[7] Matt Day et al., *Amazon Workers Are Listening to What You Tell Alexa*, BLOOMBERG, Apr. 10, 2019, https://www.bloomberg.com/news/articles/2019-04-10/is-anyone-listening-to-you-on-alexa-a-global-team-reviews-audio.

21.     Although Alexa Devices have "far-field microphones" meant to listen for trigger words, Alexa Devices' large range eavesdropping is occurring much more frequently.[8]  Alexa Devices have recorded PIN codes **typed into phones**,[9] a family's conversations about medication,[10] and sexually intimate moments (and potentially sexual assault).[11]  An Alexa Device has even mistakenly recorded a family's private conversation and forwarded the recording to someone in the family's digital contact book.[12]

22.     Once an Alexa Device records a user's communication, Defendant permanently stores a copy of the recording on its own servers.[13]  In a letter to Senator Chris Coons of Delaware, Defendant admitted that the company does not delete recordings from its servers **even if** a user chooses to delete his or her recordings.[14]  Even more troubling, in response to

---

[8] Grant Clauser, *Amazon's Alexa Never Stops Listening to You. Should You Worry?*, N.Y. TIMES, Aug. 8, 2019, https://www.nytimes.com/wirecutter/blog/amazons-alexa-never-stops-listening-to-you/

[9] Aditya Saroha, *Alexa Can Hear and Record What is Typed in Nearby Devices, Study Finds*, THE HINDU, Dec. 28, 2020, https://www.thehindu.com/sci-tech/technology/alexa-can-hear-and-record-what-is-typed-in-nearby-devices-study-finds/article33435660.ece.

[10] Geoffrey A. Fowler, *Alexa Has Been Eavesdropping On You This Whole Time*, THE WASHINGTON POST, May 6, 2019, https://www.washingtonpost.com/technology/2019/05/06/alexa-has-been-eavesdropping-you-this-whole-time/.

[11] Asher Stockler, *Amazon Alexa Capturing Audio of People Having Sex, Possible Sexual Assaults: Report*, NEWSWEEK, Aug. 1, 2019, https://www.newsweek.com/amazon-alexa-recordings-romania-sex-privacy-1452173.

[12] Carley Lerner, *Is Alexa Really Always Listening*, READER'S DIGEST, May 28, 2021, https://www.rd.com/article/is-alexa-really-always-listening/

[13] Makena Kelly & Nick Statt, *Amazon Confirms It Holds on to Alexa Data Even if You Delete Audio Files*, THE VERGE, July 3, 2019, https://www.theverge.com/2019/7/3/20681423/amazon-alexa-echo-chris-coons-data-transcripts-recording-privacy.

[14] *Id*.

Defendant's letter, Senator Coons shared that Defendant did not answer to what extent Defendant is sharing this personal data with third-parties, and how those third-parties are using that information.[15]

23.    Defendant asserts that the recordings are saved and analyzed to improve Alexa's artificial intelligence, but reports agree that Defendant is vague in explaining to what extent it stores users' data and why Defendant does not actually scrub its servers of recordings upon users' request.[16]  Further, Defendant cannot use user communications that were unintentionally provided to "improve its services."  And, as a large e-commerce company, Defendant stands to massively profit from using the information from these recordings through targeted advertising, whether or not these recordings were lawfully obtained.

24.    Defendant has the technological ability to have Alexa Devices request consent from users before recording and storing data, yet Defendant does not take steps in protecting users' privacy.  The Alexa Devices do not warn users that the Alexa Devices are monitoring, intercepting, recording, and storing their communications.  Or, at the very least, users will not know the Alexa Devices were monitoring their communications until *after* the communication has already been recorded, and the Alexa Device responses to an unintended prompt.

---

[15] Alfred Ng, *Amazon Alexa Keeps Your Data With No Expiration Date, and Shares It Too*, CNET, July 2, 2019, https://www.cnet.com/home/smart-home/amazon-alexa-keeps-your-data-with-no-expiration-date-and-shares-it-too/

[16] *Id.*

25.     Further, the storage of the recordings is unsecure.  Reporting indicates that Defendants' storage is vulnerable for cyber-attacks, meaning that hackers could access users' voice history and personal information.[17]

26.     In short, the Alexa Devices intercepted, recorded, and stored, the communications of Plaintiffs and other users, even when Plaintiffs and other users did not use the trigger word to activate their Alexa Devices.  These communications were then accessed by Defendant and potentially transferred to further third parties for advertising purposes.

## CLASS ALLEGATIONS

27.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Alexa Devices and had their communications recorded without using the trigger word (the "Nationwide Class").

28.     Plaintiff Lenehan seeks to represent a class defined as all Florida residents who purchased the Alexa Devices and had their communications recorded without using the trigger word (the "Florida Class").

29.     Plaintiff Brust seeks to represent a class defined as all California residents who purchased the Alexa Devices and had their communications recorded without using the trigger word (the "California Class").

30.     Collectively, the Nationwide Class, the Florida Class, and the California Class shall be known as the "Classes."

---

[17] Dikla Barda et al., *Keeping the Gate Locked on Your IoT devices: Vulnerabilities Found on Amazon's Alexa*, CHECK POINT RESEARCH, Aug. 13, 2020, https://research.checkpoint.com/2020/amazons-alexa-hacked/

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

31.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the tens or hundreds of thousands.  The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

32.     Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes.  Common legal and factual questions include, but are not limited to, whether Defendant has violated the FSCA, Fla. Stat. Ann. § 934.01, et seq., whether Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632, and whether members of the Classes are entitled to actual and/or statutory damages for the aforementioned violations.

33.     The claims of the named Plaintiffs are typical of the claims of the Classes because the named Plaintiffs, like all other members of the Classes, used an Alexa Device and had their communications monitored, intercepted, recorded, stored, and accessed by Defendant.

34.     Plaintiffs are an adequate representative of the Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

35.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Classes.  Each individual member of the Classes may lack the

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

-11-

resources to undergo the burden and expense of individual prosecution of the complex and

extensive litigation necessary to establish Defendant's liability.  Individualized litigation

increases the delay and expense to all parties and multiplies the burden on the judicial system

presented by the complex legal and factual issues of this case.  Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of The Federal Wiretap Act,
### 18 U.S.C. § 2510, *et seq.*

36.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully

set forth herein.

37.    Plaintiffs brings this claim individually and on behalf of the members of the

proposed Classes against Defendant.

38.    As alleged herein, Defendant intentionally intercepted the electronic

communications of Plaintiffs and the proposed Classes.

39.    Each of Defendant's wiretaps, automatic monitoring tools and software described

herein, is an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5), and is

primarily used for the purpose of the surreptitious interception of electronic communications.

40.    Defendant intercepts the electronic communications contemporaneously as they

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

are sent.

41.     Defendant receives and stores these messages through the employment of a mechanical or electrical tool or apparatus that is considered a device under 18 U.S.C § 2510, *et seq*.

42.     Defendant's interception and internment of electronic communications sent by Plaintiffs and members of the Classes is intentional, as alleged herein.

43.     Defendant's conduct violated 18 U.S.C. § 2511 and therefore gives rise to a claim under 18 U.S.C. § 2520.

44.     Pursuant to 18 U.S.C. § 2520, Plaintiff and the Classes are entitled to the greater of actual damages or statutory damages of not less than $100 a day for each day of violation or $10,000, whichever is greater.

<u>**COUNT II**</u>
**Violation of the Florida Security of Communications Act,**
**Fla. Stat. Ann. § 934.03**

45.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

46.     Plaintiff Lenehan brings this claim individually and on behalf of the members of the proposed Florida Class against Defendant.

47.     It is a violation of the FSCA to "intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any wire, oral, or electronic communication." Fla. Stat. Ann. § 934.03(1)(a).

48.     Further, it is a violation to intentionally use, or endeavor to use, "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." Fla. Stat. Ann. § 934.03(1)(d).

49.    The FSCA defines "intercept" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. Ann. § 934.02(3).

50.    The FSCA defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce." Fla. Stat. Ann. § 934.02(12).

51.    Defendant violated § 934.03(1)(a) of the FSCA by intercepting Plaintiff Lenehan's and members of the Florida Class's oral communications when they spoke in hearing range of an Alexa Device.

52.    Defendant intercepted Plaintiff Lenehan's and members of the Florida Class's oral communications without their prior consent.

53.    Defendant violated § 934.03(1)(d) of the FSCA by using the unlawfully intercepted communications.

54.    Plaintiff Lenehan and members of the Florida Class had an expectation of privacy while in the vicinity of an Alexa Device and not using the trigger word, which Defendant violated by intercepting their oral communications with the Alexa Device. Fla. Stat. Ann. § 934.01(4).

55.    As a result of Defendant's conduct, and pursuant to § 934.01 of the FSCA, Plaintiff Lenehan and members of the Florida Class were harmed and are each entitled to

CLASS ACTION COMPLAINT
CASE NO.

1   "liquidated damages computed at the rate of $100 a day for each day of violation or $1,000,

2   whichever is higher."  Fla. Stat. Ann. § 934.10(b).

3       56.     Plaintiff Lenehan and members of the Florida Class are also entitled to

4   "reasonable attorney's fees and other litigation costs reasonably incurred."  Fla. Stat. Ann. §

5   934.10(d).

6       57.     Plaintiff Lenehan and members of the Florida Class are also entitled to injunctive

7   relief.

8

9                                **COUNT III**
                    **Violation of the California Invasion of Privacy Act,**
10                          **Cal. Penal Code § 631**

11      58.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully

12  set forth herein.

13      59.     Plaintiff Brust brings this claim individually and on behalf of the members of the

14  proposed California Class against Defendant.

15      60.     To establish liability under section 631(a), Plaintiff Brust need only establish that

16  Defendant, "by means of any machine, instrument, contrivance, or in any other manner," did any

17  of the following:

18

19              Intentionally taps, or makes any unauthorized connection, whether
                physically, electrically, acoustically, inductively or otherwise, with
20              any telegraph or telephone wire, line, cable, or instrument, including
                the wire, line, cable, or instrument of any internal telephonic
21              communication system,

22              *Or*

23              Willfully and without the consent of all parties to the
24              communication, or in any unauthorized manner, reads or attempts
                to read or learn the contents or meaning of any message, report, or
25

1

2

> communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

61.     The California Supreme Court has twice explained that the "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line permits an outsider to tap his telephone or listen in on the call." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985); *Smith v. LoanMe*, 11 Cal. 5th 183, 200 (2021) ("As [the California Supreme Court] explained in *Ribas* … a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.").  The Ninth Circuit similarly explained that one of the purposes of wiretapping statutes is "to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'"  *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020).

21

22

62.     Alexa's software is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

23

24

25

63.     At all relevant times, by using the Alexa Devices, Defendant intentionally tapped, electronically or otherwise, the lines of internet communication between Plaintiff Brust and

26

27

28

members of the California Class, on the one hand, and various individuals—including doctors, lawyers, financial professionals, and close friends and family—on the other.

64.     At all relevant times, by using Alexa's technology, Defendant willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of telephonic communications of Plaintiff Brust and members of the California Class, while the telephonic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

65.     Plaintiff Brust and members of the California Class did not consent to any of Defendant's actions in enabling wiretaps in Alexa Devices.  Nor have Plaintiff Brust and members of the California Class consented to Defendant's intentional access, interception, reading, learning, recording, and collection of Plaintiff Brust and members of the California Class's telephonic communications.

66.     The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

67.     Unless enjoined, Defendant will continue to commit the illegal acts alleged here. Plaintiff Brust continues to be at risk because they frequently use verbal communication within the hearing range of Alexa Devices.  Plaintiff Brust continues to desire to use her Alexa Device for the purpose of voice-controlled tasks and entertainment.  However, Plaintiff Brust is wary of using the Alexa Device if the Alexa Device is recording and storing her communications without her consent or without the trigger word being said.  Plaintiff Brust would be willing to use

1  Defendant's Alexa Device if she knew that she would not be wiretapped by Defendant when she

2  did not use a trigger word.

3      68.    Plaintiff Brust and members of the California Class seek all relief available under

4  Cal. Penal Code § 637.2, including statutory damages of $5,000 per violation.

5                                    **COUNT IV**
                        **Violation Of The California Invasion Of Privacy Act,**
6                               **Cal. Penal Code § 632**

7      69.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully

8  set forth herein.

9
10     70.    Plaintiff Brust brings this claim individually and on behalf of the members of the

11 proposed California Class against Defendant.

12     71.    California Penal Code § 632(a) provides, in pertinent part:

13         A person who, intentionally and without the consent of all parties to
14         a confidential communication, uses an electronic amplifying or
           recording device to eavesdrop upon or record the confidential
15         communication, whether the communication is carried on among
           the parties in the presence of one another or by means of a telegraph,
16         telephone, or other device, except a radio, shall be punished by a
           fine not exceeding two thousand five hundred dollars.
17

18     72.    Defendant is a "persons under the California Invasion of Privacy Act.

19     73.    At all relevant times, by using the Alexa Devices, Defendant intentionally used an

20 electronic amplifying or recording device to eavesdrop upon and record the confidential

21 communications of Plaintiff Brust and members of the California Class.

22
       74.    When using their Alexa Devices, Plaintiff Brust and members of the California
23
   Class had an objectively reasonable expectation of privacy.  Plaintiff Brust and members of the
24
   California Class did not reasonably expect that Defendant would intentionally use an electronic
25

26 CLASS ACTION COMPLAINT                                    BURSOR & FISHER, P.A.
   CASE NO.                                          1990 NORTH CALIFORNIA BLVD., SUITE 940
27                                                          WALNUT CREEK, CA 94596

28                                          -18-

amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff Brust and members of the California Class unless Plaintiff Brust and members of the California Class used a trigger word to activate their Alexa Device.

75.     Plaintiff Brust and members of the California Class did not consent to Defendants' intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff Brust and members of the California Class when they did not activate their Alexa Device using a trigger word.

76.     Plaintiff Brust and members of the California Class have suffered loss by reason of these violations, including, but not limited to, violation of the right of privacy and loss of value in their personal identifying information.

77.     Unless enjoined, Defendant will continue to commit the illegal acts alleged here. Plaintiff Brust continues to be at risk because they frequently use verbal communication within the hearing range of Alexa Devices.  Plaintiff Brust continues to desire to use her Alexa Device for the purpose of voice-controlled tasks and entertainment.  However, Plaintiff Brust is wary of using the Alexa Device if the Alexa Device is recording and storing her communications without her consent or without the trigger word being said.  Plaintiff Brust would be willing to use Defendant's Alexa Device if she knew that she would not be wiretapped by Defendant when she did not use a trigger word.

78.     The violation of section 632 constitutes an invasion of privacy sufficient to confer Article III standing.

79.     Pursuant to Cal. Penal Code § 637.2, Plaintiff Brust and members of the California Class have been injured by the violations of Cal. Penal Code § 632, and each seek

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 and naming Plaintiffs as the representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

CLASS ACTION COMPLAINT
CASE NO.

BURSOR & FISHER, P.A.
1990 NORTH CALIFORNIA BLVD., SUITE 940
WALNUT CREEK, CA 94596

-20-

Dated: June 28, 2021

Respectfully submitted,

**CARSON NOEL PLLC**

By: */s/ Wright A. Noel*
        Wright A. Noel

20 Sixth Avenue NE
Issaquah, WA 98027
Telephone: (425) 837-4717
Facsimile:  (425) 837-5396
E-Mail: wright@carsonnoel.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*Pro Hac Vice Forthcoming*)
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*Pro Hac Vice Forthcoming*)
Max S. Roberts (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: aleslie@bursor.com
        mroberts@bursor.com

*Attorneys for Plaintiffs*